## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH

| | | |
|---|---|---|
| **NEXT LEVEL CONTRACTING LLC, NEXT LEVEL RESTORATION LLC, QUALITY EQUIPMENT SERVICES LLC, QUALITY RESTORATION INC, TRI-CITIES RESTORATION LLC,** | § § § § § § | **Case No.** _____ |
| *Plaintiffs,* | § § | |
| **v.** | § § | |
| **ERC SPECIALISTS, LLC,** a Utah limited liability company**, MARK SULLIVAN,** an individual**, JUSTIN ATKINSON,** an individual**, JOSH ZIEGLOWSKY,** an individual**, JACOB DAVIS,** an individual**, CHANDLER CHAVIS,** an individual**, GERI BOHN,** an individual**, ROCKY CROFTS**, an individual**, & ROE CORPORATION(S),** | § § § § § § § § § § | **PLAINTIFF'S ORIGINAL COMPLAINT** |
| *Defendants.* | | |

COMES NOW Plaintiffs, Next Level Contracting LLC, Next Level Restoration, Quality Equipment Services LLC, Quality Restoration INC, and Tri-Cities Restoration LLC ("Plaintiffs") by and through its attorneys of record, and files this Plaintiffs' Original Complaint and alleges as follows:

### INTRODUCTION

1. Plaintiffs assert claims against Defendants pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), for Defendants' participation in fraudulent activities, including (but not limited to), the preparation of Plaintiffs' Employee Retention Tax Credit ("ERTC") claim. Using telephone, mail, internet and wire, Defendants' knowingly induced Plaintiffs to file an inflated and incorrect ERTC claim with the Internal Revenue Service ("IRS"), using inflated and fraudulent numbers that Defendants calculated and prepared, with the intent to

charge and collect an unconscionable and illegal contingency fee from Plaintiffs. Instead of conducting an appropriate accounting analysis to determine if Plaintiffs qualified to claim the ERTC, Defendants willfully disregarded the standard of care and prepared incredibly inflated claims with no backup justification and advised Plaintiffs to file said claims under the guise of good faith accountancy.

2.     The additional causes of action incident to this complaint are for violations of §§ 13-11a-3, 13-11a-4 of Utah's Truth in Advertising/Deceptive Trade Practices Statute, professional negligence, and related causes of action to address the damages caused to Plaintiffs by Defendants.

## **PARTIES**

3.     Plaintiff, Next Level Contracting LLC ("NLC"), is at all times relevant herein, a domestic Washington limited liability company with its principal offices and place of business in Puyallup, WA.

4.     Plaintiff, Next Level Restoration LLC ("NLR"), is at all times relevant herein, a domestic Washington limited liability company with its principal offices and place of business in Puyallup, WA.

5.     Plaintiff, Quality Equipment Services LLC ("QES"), is at all times relevant herein, a domestic Washington limited liability company with its principal offices and place of business in Puyallup, WA.

6.     Plaintiff, Quality Restoration INC ("QRI"), is at all times relevant herein, a domestic Washinton S-corporation with its principal offices and place of business in Puyallup, WA.

7.      Plaintiff, Tri-Cities Restoration LLC ("TCR"), is at all times relevant herein, a domestic Washington limited liability company with its principal offices and place of business in Puyallup, WA.

8.      Defendant, ERC SPECIALISTS, LLC, ("ERCS") is a Utah limited liability company with its principal place of business at 560 E. Timpanogos Circle, Orem, UT 84097. At all times relevant herein, ERCS was actively advertising, marketing, promoting, and retaining clients from their headquarters located in Orem, Utah.

9.      Defendant, MARK SULLIVAN, ("Sullivan") is an individual who, upon information and belief, is a resident of Utah.

10.     Defendant, JUSTIN ATKINSON, ("Atkinson") is an individual who, upon information and belief, is a resident of Utah.

11.     Defendant, JOSH ZIEGLOWSKY, ("Zieglowsky") is an individual who, upon information and belief, is a resident of Utah.

12.     Defendant, JACOB DAVIS, ("Davis") is an individual who, upon information and belief, is a resident of Utah.

13.     Defendant, CHANDLER CHAVIS, ("Chavis") is an individual who, upon information and belief, is a resident of Utah.

14.     Defendant, GERI BOHN, ("Bohn") is an individual who, upon information and belief, is a resident of Eagle Mountain, Utah. Bohn is a Certified Payroll Professional (CPP) licensed by the American Payroll Association (APA), practicing in the state of Utah.

15.     Defendant, ROCKY CROFTS, ("Crofts") is an individual who, upon information and belief, is a resident of Ogden, Utah. Crofts is an attorney licensed to practice in the State of Utah, and an active member of the State Bar of Utah.

16.     Defendant, ROE CORPORATION(S), ("ROE Corp.") represent the collective names and capacities, whether they be individual(s), corporation(s), or agents(s), of any individual named Defendants herein. Additionally, ROE Corp. represents the collective names and capacities, whether they be a corporation(s), affiliate(s), director(s), officer(s), employee(s), agent(s), supplier(s) or licensor(s), etc. of Defendant, ERCS, by and through its referral/affiliate program. ROE Corp. Defendant(s), should any exist, are currently unknown or have not yet been confirmed, as of the filing of this Complaint. Upon information and belief, ROE Corp. Defendant(s) are responsible for damages suffered by Plaintiffs as a result of the claimed breached duties, self-dealings, omissions, and engagements in any activity, as defined in the paragraphs below. Therefore, Plaintiffs sue said Defendant(s) by such fictitious name, and will seek leave to amend this complaint to show the true names and capacities of ROE Corp. Defendant(s), at such time that they are ascertained. ROE Corp. Defendant(s), until otherwise defined, are presumed to reside and conduct business within the state of Utah.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over the claims in Count One pursuant to 28 U.S.C. § 1331 because such claims arise under the laws of the United States. Specifically, Plaintiff is bringing civil claims under 18 U.S.C. § 1962(c) Racketeer, Influenced and Corrupt Organizations Act (RICO).  This Court has subject matter jurisdiction over the claims in Counts Two and Three pursuant to 28 U.S.C. §1367(a) because they are so related to the RICO claims they form part of the same case and controversy.

18.     In the alternative, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000.00 and the parties are citizens of different

states. Plaintiff is a resident of Washington, and all Defendants are assumed to be citizens and residents, of or incorporated within, the State of Utah.

19.     Venue is proper in this Court under 28 U.S.C. § 1391(b) in that all Defendants are residents of, or incorporated within, the State of Utah, in the judicial district in which this court is located.  In addition, a substantial part of the events or omissions giving rise to this claim occurred within this District.  Venue is also proper under 18 U.S.C. § 1965.

## GENERAL OVERVIEW AND ALLEGATIONS

20.     In 2020, when the Coronavirus pandemic struck the United States, it resulted in unprecedented shutdowns of American businesses across the country. In response, the United States federal government enacted the Coronavirus Aid, Relief, and Economic Security ("CARES") Act of 2020 in an attempt to soften the immense financial impact on American businesses in a multitude of industries. The CARES Act included a provision for a federal tax credit, known as the Employee Retention Tax Credit ("ERTC"). Small to mid-sized businesses that met specified criteria could obtain the benefit of ERTC as a way to offset what turned out to be a devastating and substantial impact on many companies.

21.     The ERTC is a refundable tax credit for certain eligible businesses and tax-exempt organizations that have employees and were affected during the COVID-19 pandemic.

22.     To claim the ERTC retroactively, an employer files a Form 941-X for each payroll tax quarter in which it is determined eligible, with Internal Revenue Service ("IRS"). If claimed correctly, the IRS would determine the claim to be an overpayment of tax for the specified quarter(s) and would issue a refund check to the employer.

23.     Plaintiff QRI owns and has control over Plaintiffs NLC, NLR, QES and TCR. Plaintiffs do not specialize in the preparation of tax returns. Collectively, Plaintiffs specialize in

cleaning, restoration, and construction services, and therefore sought out assistance, or received unsolicited contact from, an alleged professional in determining its eligibility to claim the ERTC.

24. The relationship between Plaintiffs qualifies them as a "control group" as defined by 26 U.S.C. § 52. All Plaintiffs share the same principals, and though individual contracts were entered into for each Plaintiff, all were signed by the control group's Controller located in Puyallup, WA.

25. On September 12, 2022, Plaintiff NLC, by and through the Controller, entered into a contract with Defendants, for ERCS to perform services with the overall purpose of determining Plaintiff's eligibility to claim the ERTC (the "Agreement"). This contract was transmitted from the state of Utah, where all Defendants reside, to the state of Washington, where Plaintiff resides, for electronic signature via the internet, using DocuSign.

26. On August 22, 2022, Plaintiff NLR, by and through the Controller, entered into a contract with Defendants, for ERCS to perform services with the overall purpose of determining Plaintiff's eligibility to claim the ERTC (the "Agreement"). This contract was transmitted from the state of Utah, where all Defendants reside, to the state of Washington, where Plaintiff resides, for electronic signature via the internet, using DocuSign.

27. On August 18, 2022, Plaintiff QES, by and through the Controller, entered into a contract with Defendants, for ERCS to perform services with the overall purpose of determining Plaintiff's eligibility to claim the ERTC (the "Agreement"). This contract was transmitted from the state of Utah, where all Defendants reside, to the state of Washington, where Plaintiff resides, for electronic signature via the internet, using DocuSign.

28. On September 1, 2022, Plaintiff QRI, by and through the Controller, entered into a contract with Defendants, for ERCS to perform services with the overall purpose of determining

Plaintiff's eligibility to claim the ERTC (the "Agreement"). This contract was transmitted from the state of Utah, where all Defendants reside, to the state of Washington, where Plaintiff resides, for electronic signature via the internet, using DocuSign.

29.     On July 27, 2022, Plaintiff TCR, by and through the Controller, entered into a contract with Defendants, for ERCS to perform services with the overall purpose of determining Plaintiff's eligibility to claim the ERTC (the "Agreement"). This contract was transmitted from the state of Utah, where all Defendants reside, to the state of Washington, where Plaintiff resides, for electronic signature via the internet, using DocuSign.

30.     At all times relevant to this Complaint, Defendants marketed ERCS as a company that "Specializes in Maximizing ERC Funding for Small Businesses" on its company website. In an effort to bolster its reputation and maliciously inflate the value of its services, Defendants, used online advertisements to make misleading representations to potential clients. Specifically, Defendants' online advertisements represent that it had specialized knowledge and skillsets to conduct a proper qualification analysis. Some of these statements included:

> *"We evaluate your claim in every way possible to ensure we maximize your credit."*
>
> *"Our team strictly focuses on ERC allowing us to be the experts and resulting in more funding for your business."*
>
> *"While the general qualifications for the ERC program seem simple, the interpretation of each qualification is very complex. Our significant experience allows us to ensure we maximize any qualifications that may be available to your company."*
>
> *"At ERC Specialists we have decades of payroll experience, which has allowed us to specifically focus to understanding and maximizing the ERC program"*

31.     Further, Defendants, encouraged potential clients (or rather, instilled *fear* in potential clients) to not consult with a CPA regarding their eligibility for the ERTC. This was

accomplished by making statements and displaying fake client testimonials on the ERCS website[1],

all of which implied that a CPA would be incorrect in determining that the potential client's

business did not qualify for the ERTC. Some of these statements included:

> "*No need to be the guinea pig for your CPA. We average 10-20% more funding than a CPA not familiar with the program.*"
>
> "*When I heard about the ERC program I reached out to my CPA. 30 minutes later he called and said I didn't qualify. Out of curiosity, I had ERC Specialists see if I qualified. Turns out I received the ERC for 7 of my 9 employees. Highly recommended. - Scott Moore*"
>
> "*The challenge is the ERC credit is taken on your payroll returns and not through your business income tax returns, which is what most CPA's handle. Because of this most CPA's don't process this credit*"

32.    At all times relevant to this Complaint, Plaintiffs allege that all Defendants', named

and unnamed herein, advertisements, statements, and representations regarding their services,

expertise, and client satisfaction, were intentionally false and misleading.

33.    At all times relevant to this Complaint, Plaintiffs allege that all Defendants, named

and unnamed herein, lacked any more knowledge, skill, or ability to determine eligibility for the

ERTC, over an ordinary tax preparer, CPA, or layperson.

34.    The ERTC is only available to certain employers that paid qualified wages to some

or all employees after March 12, 2020, and before January 1, 2022 (during the COVID-19

pandemic), and who met the requirements for eligibility.

35.    Additionally, Plaintiffs' classification as a control group must be fully analyzed and

considered to properly determine eligibility for ERTC.[2]

---

[1] Some of these testimonials were even made using the identities of individuals financially incentivized through the ERCS "affiliate" program.
[2] *See* IRS Notice 2021-20.

36.     In this case, Defendants provided an online intake questionnaire for Plaintiffs to complete, regarding its potential for eligibility to obtain the ERTC. Plaintiffs, by and through the Controller, completed this form and an identical copy was attached to each agreement for each Plaintiff. A simple review of the responses provided in the questionnaire to Defendants would indicate to *anyone* (especially self-proclaimed "experts") that further analysis is required, as the responses alone are *wholly insufficient* to determine a valid ERTC claim.

37.     Additionally, nothing on the questionnaire inquired about the relationship between Plaintiffs.

38.     At all times relevant to this Complaint, Plaintiffs allege that Defendants did not conduct any meaningful analysis of Plaintiffs' eligibility to receive the ERTC and failed to accurately ascertain the basis for Plaintiffs' eligibility to receive the ERTC, the quarters Plaintiffs were eligible for the ERTC, and the amount of the ERTC that Plaintiffs were entitled to receive. In fact, the last line of the Agreement executed by Plaintiffs, reads as follows:

> **"By signing this agreement, I understand and acknowledge that the appropriate returns necessary to obtain the ERC credit will be prepared and filed. Once filed those returns cannot be rescinded or revoked. My signature below evidences my permission for ERC Specialists to do so."**[3]

This is a clear indication that Defendants never intended to consult with Plaintiffs to obtain further information, beyond what was provided to them in the intake questionnaire attached to the Agreement.[4]

---

[3] (emphasis added).

[4] Interestingly, in 2024 the IRS identified some of the signs of "ERC Scam Promoters" to include "Aggressive claims from the promotor that the business receiving the solicitation qualifies before any discussion of the group's tax situation. In reality, the Employee Retention Credit is a complex credit that requires careful review before applying." *See,* https://www.irs.gov/coronavirus/frequently-asked-questions-about-the-employee-retention-credit#eligibility.

39.     Based upon the representations made by Defendants as to the accuracy of their qualification analysis, Defendant ERCS, by and through all other Defendants named and unnamed herein, induced Plaintiffs to allow Defendant ERCS, to file the Form 941-X on behalf of Plaintiffs, without further discussion.

## PLAINTIFF'S CAUSES OF ACTION

### COUNT ONE
### (Violation of 18 U.S.C. § 1962(c))

40.     Plaintiffs incorporate by reference and realleges paragraphs 1 through 39 set forth above.

41.     Plaintiffs allege that Defendants, inclusive of all leadership, principal agents, and others known and unknown to Plaintiffs, were members and associates of an "enterprise" (hereinafter referred to as the "Enterprise"), as defined by 18 U.S.C. § 1961(4). That is, they are a group of individuals associated in fact, although not a legal entity. The Enterprise consisted of (i) ERCS, the entity; (ii) all affiliate entities, shell corporations, escrow agencies, and more that are unnamed herein (collectively referred to as ROE Corp.); (iii) individuals employed by and associated with all entities previously mentioned; and (iv) all others known and unknown (also encompassed under the reference to ROE Corp.).

42.     Plaintiffs allege that the Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise. The Enterprise was engaged in, and its activities affected, interstate commerce in that ERCS and all other Defendants named and unnamed herein, advertised and marketed their services and company(s) to businesses nationwide. The Enterprise operated primarily in the District of Utah.

43.    Plaintiffs allege that Defendants, and all others known and unknown, deliberately participated in unlawful, fraudulent, and deceptive activities, and conspired to commit these activities, to conduct the affairs of the Enterprise.

44.    Plaintiffs allege that the purpose of the Enterprise included preserving, protecting, promoting, and enhancing the power, reputation, and brand of ERCS, all individual Defendants, and all ROE Corp. affiliates, whether known or unknown to Plaintiff, to enrich the members of the Enterprise at the expense of Plaintiffs.

45.    Plaintiffs allege that the purpose of the Enterprise was to undertake a financial scheme to collect a contingency fee for their "services", that related to their provision of a fraudulent and/or vastly inflated value for Plaintiffs' ERTC claim.

46.    Defendants' conduct, and the conduct of each Defendant named herein, constitutes racketeering as set forth in 18 U.S.C. § 1964(c). Specifically, Congress has defined "racketeering activity" to be "any act which is indictable under any of the following provisions of title 18, United States Code"[5], inclusive of: Mail Fraud (18 U.S.C. § 1341) and Wire Fraud (18 U.S.C. § 1343).

47.    Defendants in this case engaged in multiple instances of mail fraud, wire fraud, and monetary transactions in property derived from unlawful activity by filing fraudulent ERTC claims with the Internal Revenue Service on behalf of Plaintiffs and accepting monetary payment from Plaintiffs for these unlawful services.

48.    Plaintiffs allege that Defendants have knowingly conducted and/or participated, directly and indirectly, in the conduct of the affairs of the above-described Enterprises through a "pattern of racketeering activity" as defined under 18 U.S.C. § 1961(5).

---

[5] 18 U.S.C. § 1961(1)(B).

49.    Plaintiffs allege that such racketeering activity consists of *repeated* violations and the conspiracy to commit violations of Mail Fraud (18 U.S.C. § 1341), Wire Fraud (18 U.S.C. § 1343).

50.    These predicate acts were part of a scheme and were not isolated events as Defendants filed multiple fraudulent claims on behalf of Plaintiffs with the IRS, and Defendants accepted payment across state lines in the amount of $351,303.31[6] for their "services" to Plaintiffs. Further, Plaintiffs allege that the commission of these predicate acts were premeditated, as is described in paragraphs 34 through 39 of this complaint.

51.    As a direct and proximate result of the Defendants' conduct, Plaintiffs were financially injured by having to retain a separate and professional tax consulting firm to determine that the claims filed by ERCS were fraudulent.

52.    As a direct and proximate result of the Defendants' conduct, Plaintiffs were financially injured by paying a significant sum of money to ERCS for what they believed to be valid ERTC claims, and financially planning for the use of this refund in their ordinary course of business which ultimately had to be returned to avoid facing harsh penalties.

53.    As a direct and proximate result of the Defendants' conduct, Plaintiffs were financially injured by having to retain counsel to assist them in the filing of this suit and all prelitigation attempts to have Defendants return Plaintiffs' fee.

54.    Section 1962(c)[7] provides relief against parties who engage in a pattern of racketeering activity, and Defendants have civil liability to Plaintiffs under this section of the U.S. Code.

---

[6] The amount of $351,303.31 represents the amount actually paid by Plaintiffs to Defendants, however, a total amount of $360,437.56 was invoiced.
[7] 18 U.S.C. § 1962(c).

55.    18 U.S.C. § 1964(c) states that "Any person injured in his business or property by reason of a violation of section 1962 of this chapter [18 USCS § 1962] may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee". Plaintiffs allege that Defendants are liable under this provision.

## COUNT TWO
**(Utah Pattern of Unlawful Activity Act Violations - Utah Code Ann. § 76–10–1603(3))**

56.    Plaintiffs incorporate by reference and realleges paragraphs 1 through 55, set forth above.

57.    Plaintiffs allege that Defendants' conduct, and the conduct of each Defendant named herein, consisted of a pattern of unlawful activity as utilized in § 76–10–1605. Specifically, the Utah State Legislature has defined a "Pattern of unlawful activity" to be "engaging in conduct which constitutes the commission of at least three episodes of unlawful activity, which episodes are not isolated, but have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics".[8] For the purposes of this definition, "Unlawful activity" means "to directly engage in conduct or to solicit, request, command, encourage, or intentionally aid another person to engage in conduct which would constitute any offense described by the following crimes or categories of crimes"[9]. These crimes or categories of crimes include (but are not limited to): Making a written false statement under

---

[8] Utah Code Ann. § 76-10-1602(2).
[9] Utah Code Ann. § 76-10-1602(4).

Utah Code Ann. § 76-8-504[10]; Theft by deception under Utah Code Ann. § 76-6-405[11]; and Any act illegal under the laws of the United States and enumerated in 18 U.S.C. § 1961(1)(B)[12].

### a.  Written False Statement (Utah Code Ann. § 76-8-504)

58.     Plaintiffs allege Defendants engaged in multiple instances of making written false statements in official matters with the intent to deceive a public servant[13], through the creation and submission to the IRS of Plaintiffs' ERTC claims using IRS Form 941-X.

59.     Plaintiffs allege Defendants had or had reason to know that Plaintiffs did not qualify for the ERTC, as described in paragraphs 34 through 39 set forth above.

60.     Plaintiffs allege that Defendants, despite knowing they were submitting a false claim for refund on behalf of Plaintiffs to the IRS, proceeded to file said claim(s), and therefore, made a written false statement to an employee of the U.S. Department of the Treasury and/or an employee of the IRS based out of the State of Utah.

61.     Plaintiffs allege that Defendants had the intent to have the above public servant process the fraudulent claim in the course of their normal government function.

### b.  Theft by Deception (Utah Code Ann. § 76-6-405)

62.     Plaintiffs allege that Defendants engaged in instances of theft by deception by obtaining property (payment) from Plaintiffs, by Defendants' use of deception through "puffing"[14] the worth of their services both verbally and through false advertisements, with the purpose of depriving Plaintiffs of money.

---

[10] *Id.* ¶ (rrr).
[11] *Id.* ¶ (hh).
[12] *Id.* ¶ (iiiii).
[13] For purposes of § 76-8-504, "Public servant" means a person hired or paid by a public entity to perform a government function. Utah Code Ann. § 76-1-101.5(16)(a)(iii).
[14] Utah Code Ann. § 76-6-405(1)(a).

63.     Based on facts previously stated in paragraphs 30 through 33 above, Plaintiffs further allege that Defendants intentionally puffed their worth for the purpose of obtaining money from potential customers under fraudulent pretenses.

64.     Plaintiffs allege that at the times relevant herein, Defendants advertised and misled potential customers to believe that they had "Advisory Board Members" consisting of the State of Utah Attorney General (Sean Reyes), the Former U.S. Attorney General (Matt Whitaker), and more highly credible individuals, to "puff" their worth. Plaintiffs further allege that Defendants intentionally puffed their worth in this manner for the purpose of obtaining money from potential customers under fraudulent pretenses.

### c.  Act(s) Illegal under 18 U.S.C. § 1961(1)(B)

65.     Lastly, as described in paragraphs 1 through 64 set forth above, Defendants engaged in Racketeering which is an act illegal under the laws of the United States and enumerated in 18 U.S.C. § 1961(1)(B).

66.     In summary, Plaintiffs allege a cause of action for violation of the Utah Pattern of Unlawful Activity Act. Section 76-10-1605 of the code provides civil remedies to persons injured by a pattern of unlawful activity. Defendants individually have civil liability to Plaintiffs under this section, and should be awarded two times the damages sustained, costs of this suit, and reasonable attorney fees.[15]

### COUNT THREE
### (Truth in Advertising Violations – Utah Code Ann. 1953 § 13-11a-3(1))

67.     Plaintiffs incorporate by reference and realleges paragraphs 1 through 66, set forth above.

---

[15] Utah Code Ann. §§ 76-10-1605(1), (2).

68.     Deceptive trade practices occur when, in the course of a person's business, vocation, or occupation that person: (b) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (c) causes likelihood of confusion or of misunderstanding as to affiliation, connection, association with, or certification by another; and (i) advertises goods or services or the price of goods and services with intent not to sell them as advertised.[16]

69.     Based on facts and allegations previously stated in paragraphs 30 through 33 and 58 through 61, set forth above, Plaintiffs further allege that Defendants intentionally mislead Plaintiffs into believing that Defendants would perform a comprehensive analysis of whether or not Plaintiffs qualified to claim the ERTC.

70.     Based on facts and allegations previously stated in paragraphs 62 through 64 set forth above, Plaintiffs further allege that Defendants intentionally mislead Plaintiffs into believing that Defendants were backed by government officials, leaders, and more, and were a team inclusive of certified payroll administrators, and attorneys, creating a more reliable appearance.

71.     Plaintiffs allege that Defendants knowingly advertised a service that they had no intention of providing, in that they marketed themselves as capable of conducting a better analysis than a CPA, for claiming the ERTC. Plaintiffs further allege that in reality, Defendants had no intention of conducting said analysis, had no intention of communicating with Plaintiffs to gather additional information relevant to its claim, and had no intention of filing a valid legal ERTC claim with the IRS.

72.     Plaintiffs allege that Defendants advertised a guarantee on their website that they had no intention of upholding, to induce prospective clients into entering into an agreement with

---

[16] Utah Code Ann. §§ 13-11a-3(1)(b), (c), (i).

16

them. At the time relevant to this complaint, Plaintiffs further alleges that Defendants' website read the following: *"our fee is covered by our **100% Money Back Guarantee**"*.

73.     In summary, Plaintiff alleges a cause of action for violation of the Utah Truth in Advertising/Deceptive trade practices statute. Section 13-11a-4 of the code provides civil remedies to persons injured by deceptive trade practices. Defendants have civil liability to Plaintiffs under this section and should be awarded damages sustained, pre- and post-judgment interest, costs, and reasonable attorney fees.

## JURY DEMAND

Plaintiffs demand a jury trial for all causes of action stated herein.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, by and through undersigned counsel, respectfully request that upon final trial of this cause, the Court enter a judgment against Defendants, each of them jointly and individually, with respect to each individual count alleged herein, inclusive of respective damages, costs, and attorney's fees.

Plaintiffs further request that the Court enter judgment against Defendants, each of them jointly and individually, for pre-judgment and post-judgement interest, at the maximum rate allowed by law.

Plaintiffs further request that the Court enter judgement against Defendants, each of them jointly and individually, for Exemplary damages in such amount as the finder of fact may award at its discretion and all such other and further relief, legal and equitable, special or general, to which Plaintiffs may be justly entitled.

Dated: October 24, 2024                          Respectfully submitted,

                                                 */s/* Kigan Martineau
                                                 KIGAN MARTINEAU

17

Utah Bar No. 15299
Benzion and Martineau
162 N 400 E bldg A, # 101
St. George, UT 84770
Telephone: (435) 351-1788
Kigan@4theinjured.com

*/s/ Jacob S. Langley*
JACOB S. LANGLEY
*PHV Admission Pending*
Georgia Bar No. 713503
Zerbe, Miller, Fingeret,
Frank & Jadav, LLP
3009 Post Oak Blvd., Suite 1700
Houston, Texas 77056
Telephone: (713) 513-8152
jlangley@zmflaw.com
cgregory@zmflaw.com

**ATTORNEYS FOR PLAINTIFFS**